1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT
9
## SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  LARRY McIVER, | CASE NO. 09CV1975-LAB (AJB) |
| 12                       Plaintiff, | **ORDER OF DISMISSAL; AND** |
| 13        vs. | **ADMONITION TO PLAINTIFF'S COUNSEL** |
| 14  PACIFIC CARMEL MOUNTAIN HOLDINGS, LP, | |
| 15 | |
| 16                       Defendants. | |

17        On November 7, as the trial date was approaching, Plaintiff's counsel filed a

18 declaration stating that his client had moved to Texas and suggesting that the case was

19 moot, as his client, Larry McIver, would not be returning. Because the only issue for trial was

20 injunctive relief requiring Defendant Sears, Roebuck, & Co. to remedy certain alleged

21 violations of the Americans with Disabilities Act in Sears' store, Plaintiff's permanent move

22 out of state with no plan to return would moot this case.

23        Sears' counsel, however, questioned the sufficiency of Plaintiff's counsel's

24 declaration, arguing McIver might be acting in bad faith to terminate this case after realizing

25 he would probably lose at trial.[1] The Court therefore issued an order to show cause (Docket

26 _____

27        [1] While this was Sears' main concern, there are others. When McIver moved to
Texas, knowing he might or would not be returning to California, he should have promptly
28 notified his counsel, who in turn should have brought this to the Court's and Defendants'

no. 196, the "OSC"), requiring Plaintiff's counsel to file a declaration by McIver or by someone else with personal knowledge, giving additional information. That declaration was to have been filed by December 3.

Plaintiff's counsel failed to file anything, and Sears on December 13 filed its own response. Sears' response expresses skepticism at Plaintiff's counsel's representations, and asks for discovery in an effort to show that McIver knew there weren't any barriers at the Sears store, and strategically mooted the case by moving.

Then on December 14, Plaintiff's counsel filed a late declaration (the "Hubbard Declaration") stating that for reasons Plaintiff's counsel doesn't understand, he had received no electronic copy of the order to show cause and learned about it for the first time on seeing Sears' response. The Hubbard Declaration states that Plaintiff's counsel is communicating with its "IT company" to figure out what happened.

**Timeliness of McIver's Response to the OSC**

The Hubbard Declaration is insufficient to show why Plaintiff's counsel didn't see or respond to the order to show cause. When any order or other document is filed in a docket, his District's Case Management/Electronic Case Filing system automatically sends an email to attorneys, at the email address supplied by attorneys and listed in the docket. In addition, the docket shows an electronic receipt, demonstrating that the email notice was in fact sent. The receipt for the order to show cause (Docket no. 196) shows that a notice was sent to Plaintiff's counsel on November 14, 2012 at two different email addresses, usdcso@hubslaw.com and kaina@hubslaw.com, and there is no evidence email to either was undeliverable. A failure by an IT provider is unlikely to cause the effect the Hubbard Declaration describes, *i.e.*, the unnoticed failure of two separate emails to arrive. What is more likely is that the emails either arrived and were missed, or were caught in the firm's

_____

attention, to avoid wasting judicial resources and imposing undue burdens on party opponents. If, as it appears, McIver permitted his attorney to continue seeking injunctive relief even after he knew he didn't want or need it, his behavior was vexatious because it imposed needless and unjust costs and burdens both on the Court and on opposing parties for no good reason.

09CV1975

1  spam filter. If the former occurred, it is the result of Plaintiff's counsel's carelessness.  If the
2  latter occurred, it is the result of Plaintiff's counsel's failure to comply with this District's
3  electronic filing requirements, as embodied in § 1(f) of the Electronic Case Filing
4  Administrative Policies and Procedures manual. Among other things, the manual requires
5  parties filing electronically to maintain an electronic mailbox of sufficient capacity and with
6  the appropriate email permissions to receive electronic notices.

7      Plaintiff's attorneys of record, Lynn Hubbard III and Scottlynn Hubbard, are therefore
8  admonished to review and comply with local ECF requirements, including maintaining and
9  consistently monitoring an email address where notices of docket events will be received and
10  seen.

11      One thing the Hubbard Declaration does make clear is that the failure to file a timely
12  response to the OSC is attributable to counsel, and not to McIver himself. McIver did submit
13  his own signed declaration, which was attached as an exhibit to the Hubbard Declaration,
14  and later entered in the docket on December 18, 2012 (Docket no. 199, the "McIver
15  Declaration"). The Court therefore concludes an admonition to counsel is all that is required
16  to address the untimeliness of the response.

17  **Content of McIver's Response to the OSC**

18      The OSC required McIver to provide a detailed explanation giving details of his move
19  to Texas. At a minimum, he was required to provide eight particular pieces of information.
20  (Docket no. 196 at 2:18–3:2.) The Court's order cautioned McIver that his declaration must
21  be complete and unambiguous, and that if he failed in this, the Court might draw adverse
22  inferences from the fact. *See S.E.C. v. Colello*, 139 F.3d 674, 677–78 (9th Cir. 1998) (in civil
23  cases, court is free to draw adverse inferences from a party's failure to testify). McIver's
24  declaration generally explains the circumstances surrounding his move to Texas, but it is not
25  the "complete and unambiguous declaration" required by the Court's order, nor does it
26  address all eight points the Court put to him.

27  / / /

28

1       Among the required but omitted information is a complete explanation of when McIver

2   made arrangements to permanently leave California, such as by selling his residence or

3   giving notice of intent to vacate or not to renew his lease. (*See* OSC at 2:20–22; *see also*

4   *id.* at n.2 ("This portion of the declaration should identify specifically what Plaintiff did, and

5   when he did it.")) The declaration is vague as to where McIver was living in California before

6   his move, and how he terminated those living arrangements. The OSC particularly requested

7   that information, because it would tend to show when McIver became convinced he would

8   be leaving California permanently.

9       McIver's declaration says his health declined and he was hospitalized for a week in

10  August, 2012 and again in September, 2012, then lived for a week in an assisted living

11  center. (McIver Decl., ¶¶ 2, 3.) But it is clear he was not living in the hospital or an assisted

12  living center; the declaration, and the facts of this case, make clear McIver had a permanent

13  home of some kind in California.  (*See, e.g., id.*, ¶ 2 ("During my hospital stays, it became

14  apparent that I would need more assistance upon returning home."), ¶ 3 (stating that his

15  sister came to California to help him pack his belongings).) But McIver never says when

16  abandoned that home, either by terminating his lease or by making arrangements to sell it,

17  or in some other way; all he says is that he left California around October 5 or 6, 2012. (*Id.*)

18      A favorable inference would be that McIver initially expected to return to California

19  after a short stay in Texas to recuperate, and therefore probably kept possession of his

20  home until early November, 2012. (*See* McIver Decl., ¶¶ 4, 5 (declaring that McIver was

21  admitted to a hospital shortly after arriving in Texas, and as soon as he left, he realized he

22  would have to reside in Texas).). But, as discussed, the Court will not draw favorable

23  inferences from McIver's incomplete and ambiguous declaration. Rather, the Court draws

24  an adverse inference from McIver's failure to respond to the Court's direct inquiry. Rather,

25  the Court infers that he began making arrangements to leave his home earlier, probably in

26  early August when his health began to decline quickly. (*See* McIver Decl., ¶ 2 (declaring that

27  / / /

28

09CV1975

1   McIver's health began to "deteriorate rapidly" in early August and that, during his hospital

2   stays in August and September, McIver "began to consider going to Texas").)

3          As soon as reasonably practical, it was McIver's obligation to tell his attorneys he

4   didn't need injunctive relief to require Sears (or Costco Wholesale Corporation, which was

5   at that time still a Defendant) to provide accommodations to him, because he would not be

6   shopping there any more. Instead, it is apparent he allowed this case to linger for several

7   months. During that time, his attorneys continued to litigate this case actively. Defendants

8   Sears and Costco were forced to prepare and file documents, to compile evidence, and to

9   prepare for trial. The Court issued several rulings on parties' motions and requests, and held

10  an evidentiary hearing.[2] The amount of effort that went into the litigation during this period

11  is illustrated by the numerous docket entries: in all, twenty-two documents were filed in the

12  docket from August 2 to November 6, 2012. (*See* Docket nos. 168–190.)  All this consumed

13  a good deal of Defendants' and the Court's time and resources. In hindsight it is apparent

14  this was entirely a waste, and that McIver knew or should have known it. This is either bad

15  faith, or tantamount to it.

16         At the same time, it is reasonably clear that McIver was not strategically abandoning

17  his case by moving out of state. Such strategy could probably only have been formulated in

18  consultation with attorneys familiar with the law governing Americans with Disabilities Act

19  claims and the evidence in this case. Yet his own counsel wasted their own time and efforts

20  litigating his meritless claims, and apparently were just as surprised as Defendants and the

21  Court to learn he had moved. According to them, McIver first notified them on November 6

22  by phoning their office to say he had moved, and they called him back November 7 to

23  confirm it. (Docket no. 191, (Attorney's Declaration), ¶¶ 2, 3.)

24         The fact that McIver kept the information to himself and allowed his attorneys to

25  continue on their fool's errand affords him no protection. It is not only attorneys who must

26  _____

27         [2] McIver was scheduled to be a witness at this hearing and, because he was
    hospitalized, to testify telephonically, and was kept on standby. As the hearing progressed,
28  however, it became apparent his testimony would not be needed and he was never called.

1   act in good faith; the parties themselves must do so as well, or they will be subject to

2   sanctions. *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997)

3   (discussing court's authority under various provisions of law to sanction both attorneys and

4   parties for misconduct).

5   **Conclusion and Order**

6   Based on the OSC, on McIver's and his counsel's response to it, on the record, and

7   on the discussion above, the Court finds McIver vexatiously permitted this case to go forward

8   even though he knew or should have known there was no reasonable basis for doing so.

9   He also failed to give a complete explanation of his move to Texas when ordered to do so

10  by the Court.  As a sanction, all claims in this action, and the action itself, are **DISMISSED**

11  **WITH PREJUDICE**.[3]

12  Although McIver's attorneys apparently acted in ignorance, this case illustrates the

13  importance of diligent case management, and good client communications. Even if McIver

14  never told them he was planning to move, they knew he was in poor health and had been

15  hospitalized, and should have monitored his condition and location more closely. Where a

16  client loses interest in or ability to benefit from injunctive relief, they can then promptly

17  withdraw that claim. This is particularly true, as here, where the only relief sought is

18  injunctive.  It should never happen that a completely moot case continues to be litigated at

19  great expense for several months.  Both Lynn Hubbard III and Scottlynn Hubbard are

20  / / /

21  / / /

22  / / /

23

24  _____

25  [3] Because McIver's remaining claims have become moot, the Court lacks jurisdiction to adjudicate them and would ordinarily dismiss them without prejudice. But dismissal with prejudice is permissible as a sanction. *See Ernst v. Rising,* 427 F.3d 351, 367 (6th Cir. 2005)

26  (citations omitted) (dismissal of claims with prejudice is permissible in rare cases as a sanction for misconduct, even where the court lacks jurisdiction). *Accord Gaut v. Carter,*

27  2012 WL 94479, slip op. at *1 (E.D.Cal., Jan. 11, 2012). In view of the damage McIver's misconduct caused, as well as his failure to comply with the OSC, the Court concludes this

28  is such a case.

1  therefore admonished to take precautions and implement practices going forward so that

2  they are aware whether their clients really need the relief sought.

3

4      **IT IS SO ORDERED**.

5  DATED:  January 12, 2013

6

7      **HONORABLE LARRY ALAN BURNS**
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09CV1975